UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
ZEV OSTREICHER,

                            Plaintiff,         **OPINION & ORDER**

   - against -                                 No. 19-CV-8175 (CS)

CHASE BANK USA, N.A.,

                            Defendant.
-------------------------------------------------------------x

Appearances:

Kenneth Willard
Stein Saks, PLLC
Hackensack, New Jersey
*Counsel for Plaintiff*

Christopher B. Turcotte
The Law Office of Christopher B. Turcotte, P.C.
New York, New York
*Counsel for Defendant*

Seibel, J.

      Before the Court is the motion for summary judgment of Defendant Chase Bank USA, N.A. ("Chase"). (Doc. 31.) For the following reasons, the motion is GRANTED.

**I.    BACKGROUND**

      The following facts are based on the parties' Local Civil Rule 56.1 Statements, responsive 56.1 Statements, and supporting materials, and are undisputed except as noted.[1]

---

[1] Plaintiff's responsive 56.1 Statement includes additional facts that he contends are undisputed. (Doc. 42-1 ("P's 56.1 Resp.").) But such a statement is not permitted under Local Rule 56.1. That Rule allows for a counterstatement of "additional material facts as to which it is contended that there exists a genuine issue to be tried." Local Civ. R. 56.1(b). There is no provision for a responsive 56.1 Statement to include additional facts that are not in dispute but that a party opposing summary judgment simply thinks are important; any additional facts should be confined to material facts in dispute.

Plaintiff Zev Ostreicher opened two Chase credit card accounts in 2012 and two additional ones in 2015. (P's 56.1 Resp. ¶¶ 1-2.) By 2017, all four were in delinquency status, and Chase eventually charged off the account balances – which totaled over $33,000 – as bad debt. (*Id.* ¶¶ 3-4.)

In March 2019, Plaintiff sent a letter to Experian Information Solutions, Inc. ("Experian") disputing the accuracy of the Chase credit card balances listed on his credit report. (*Id.* ¶ 5.) Two weeks later, Experian sent an Automated Consumer Dispute Verification ("ACDV") form to Chase concerning Plaintiff's dispute.[2] In response, Chase conducted an investigation and confirmed that Plaintiff's balance and past due amounts were correct. (*Id.* ¶ 7.) On Plaintiff's Experian credit report, all four entries for Plaintiff's Chase accounts contain the following notation under "Status": "Account charged off. [Balance] written off. [Balance] past due as of Mar 2019," with balances of $15,052, $486, $6,031, and $11,545, respectively. (Doc. 32 ("Turcotte Decl.") Ex. E at OST-000009-14.) The monthly payment listed for all four accounts is $0. (*Id.*)

---

[2] According to Chase, it received an ACDV from Experian regarding only one of Plaintiff's accounts. (Doc. 34 ("D's 56.1 Stmt.") ¶¶ 6, 9.) Plaintiff contends that "Chase received multiple ACDV's from Experian with regard to all four of Plaintiff's Chase accounts over different time periods." (P's 56.1 Resp. ¶ 9.) But the documents Plaintiff cites show that the ACDVs that Chase received regarding Plaintiff's other accounts were sent by other credit reporting bureaus (TransUnion and Equifax) – not Experian. (*See* Doc. 45 ("Rivera Suppl. Decl.") Exs. 4-7.) (These exhibits, along with several others, (*see* Doc. 33 ("Rivera Decl.") Exs. 1-3), were filed under seal because they contain Plaintiff's private or confidential financial information and details about Chase's software, record-keeping and operations procedures, and coding that are proprietary, commercially sensitive, and confidential, (*see* Docs. 37, 47).) Regardless, whether Chase received an ACDV from Experian regarding all of Plaintiff's accounts is not material to the outcome of the instant motion.

Plaintiff filed suit against Chase and Experian on September 2, 2019, alleging violations of the Fair Credit Reporting Act ("FCRA").  (Doc. 1 ("Compl.").)[3]  According to the Complaint, the information furnished by Chase and published by Experian is inaccurate because "the Experian report lists all four of the Chase accounts with the full balance written off, yet still owed by the Plaintiff.  Once the balance has been written off it can no longer be past due and owed by the Plaintiff."  (*Id.* ¶ 13.)  Plaintiff alleges that Chase violated the FCRA by willfully or negligently failing to conduct a reasonable investigation and continuing to report false and inaccurate adverse information regarding his account.  (*Id.* ¶¶ 17, 21, 37-46, 47-58.)  He also alleges that "Chase failed to mark the accounts as disputed despite receiving notice of the Plaintiff's disputes."  (*Id.* ¶ 18; *accord* ¶¶ 43, 55.)

At the close of discovery, Chase filed a pre-motion letter in anticipation of its motion for summary judgment.  (Doc. 28.)  Plaintiff filed a response letter, (Doc. 30), the Court held a pre-motion conference, (Minute Entry dated June 23, 2020), and the instant motion followed.

## II.     LEGAL STANDARDS

### A.     Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law . . . .  Factual disputes that are irrelevant or unnecessary will not be

---

[3] Plaintiff's claims against Experian were dismissed with prejudice by joint stipulation.  (Doc. 40.)

counted." *Id.* On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to "present evidence sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1). Where a declaration is used to support or oppose the motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated." *Id.* 56(c)(4); *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008). In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and

supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

### B. FCRA

"The FCRA places distinct obligations on three types of entities: consumer reporting agencies, users of consumer reports, and furnishers of information to consumer reporting agencies." *O'Diah v. New York City*, No. 02-CV-274, 2002 WL 1941179, at *12 (S.D.N.Y. Aug. 21, 2002). "Furnishers of information are entities that transmit, to credit reporting agencies, information relating to debts owed by consumers." *Kane v. Guar. Residential Lending, Inc.*, No. 04-CV-4847, 2005 WL 1153623, at *3 (E.D.N.Y. May 16, 2005). Here, there is no dispute that Chase is a furnisher under the FCRA.

The FCRA places two sets of obligations on furnishers. First, under 15 U.S.C. § 1681s-2(a), the FCRA imposes a duty to "provide accurate information" to consumer reporting agencies. This obligation prohibits a furnisher from reporting information that it knows or has reasonable cause to believe is inaccurate. *See* 15 U.S.C. § 1681s-2(a)(1)(A). It also prohibits a furnisher from reporting information that is, in fact, inaccurate if the consumer has notified the furnisher that the information is inaccurate. *See id.* § 1681s-2(a)(1)(B). In such instances, the furnisher "may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer." *Id.* § 1681s-2(a)(3). There is, however, no private right of action to enforce violations of § 1681s-2(a). *Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 151 (2d Cir. 2012) (*per curiam*); *Redhead v. Winston & Winston, PC.*, No. 01-CV-11475, 2002 WL 31106934, at *4 (S.D.N.Y. Sept. 20, 2002) (collecting cases). Instead, the FCRA provides that § 1681s-2(a) shall be enforced exclusively by government agencies and officials. *See* 15 U.S.C. § 1681s-2(d).

5

Second, under § 1681s-2(b), after the furnisher receives notice of a dispute with regard to the completeness or accuracy of any information provided to a consumer reporting agency, the furnisher must, among other things, (1) conduct an investigation with respect to the disputed information, including a review of the information provided by the consumer reporting agency; (2) report the results of the investigation to the consumer reporting agency; and (3) take corrective steps if the information is inaccurate, incomplete, or impossible to verify.  *See* 15 U.S.C. § 1681s-2(b)(1); *Anthony v. GE Capital Retail Bank*, 321 F. Supp. 3d 469, 477 (S.D.N.Y. 2017).  For § 1681s-2(b) to apply, the notice of dispute must originate from a consumer reporting agency.  *Howard v. Mun. Credit Union*, No. 05-CV-7488, 2008 WL 782760, at *8 (S.D.N.Y. Mar. 25, 2008) (collecting cases).  Private plaintiffs may bring an action for willful or negligent noncompliance with § 1681s-2(b).  *Neblett v. Chase Bank*, No. 09-CV-10574, 2010 WL 3766762, at *5 (S.D.N.Y. Sept. 27, 2010); *see* 15 U.S.C. § 1681n (willful noncompliance); *id.* § 1681o (negligent noncompliance).

## III.   DISCUSSION

Chase argues that it is entitled to summary judgment on two grounds:  First, it contends that the furnished information is not inaccurate and therefore cannot give rise to liability under the FCRA.  (Doc. 35 ("D's Mem.") at 1, 10-14.)  Second, it argues that Plaintiff cannot maintain a cause of action against Chase for failing to mark his account as disputed.  (*Id.* at 14-17.)

### A.   Whether Chase Furnished Inaccurate Credit Information

A prerequisite for any FCRA claim is that the challenged credit information is incomplete or inaccurate.  *See Matheson v. Ocwen Fed. Bank FSB*, No. 05-CV-2747, 2008 WL 11413560, at *8 (E.D.N.Y. June 18, 2008), *appeal dismissed*, 367 F. App'x 193 (2d Cir. 2010) (summary order).  "'[A] credit entry may be "inaccurate" within the meaning of the statute either because it

is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.'" *Fitzgerald v. Chase Home Fin., LLC*, No. 10-CV-4148, 2011 WL 9195046, at *10 (S.D.N.Y. Feb. 28, 2011) (quoting *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998)).

Here, Plaintiff does not dispute that a creditor charging off or writing off a debt is simply an internal accounting action by which the creditor stops carrying the debt as a receivable because the chances of collecting it are so low. (Doc. 42 ("P's Opp.") at 11-13); *see In re Anderson*, 884 F.3d 382, 385 (2d Cir. 2018) (charged off debt "means the bank changed the outstanding debt from a receivable to a loss in its own accounting books"); *Charge Off*, *Black's Law Dictionary* (11th ed. 2019) (defining "charge off" as "[t]o treat (an account receivable) as a loss or expense because payment is unlikely"). Nor does Plaintiff dispute that charged off debt is still owed by the debtor to the creditor. (P's Opp. at 1-2, 11-13); *see Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1297 (11th Cir. 2016) ("[C]harging off a debt does not diminish the legal right of the original creditor to collect the full amount of the debt."). Nor does Plaintiff dispute the accuracy of the account balances that Chase furnished to Experian (which Plaintiff describes as the "outstanding" balances). (P's Opp. at 1-2, 5, 13 n.5.) Instead, he argues that describing the balances as "past due" (as opposed to "outstanding") is misleading because it "suggests an ongoing monthly obligation that is inconsistent with the charged-off status." (*Id.* at 2; *accord id.* at 5, 12-13, 15.) Plaintiff posits that this implication harms him because a future lender, unaware that he had no monthly obligations on his four Chase accounts, would be less likely to extend credit. (*See* Compl. ¶¶ 22, 44, 57; Doc. 21 at 15:19-16:24, 18:3-12.) Plaintiff's argument is unpersuasive for several reasons.

First, "listing a past due balance for a charged off account [is] factually accurate and not misleading" because "[a]t any moment," Chase "could decide to collect the charged off debt and seek the delinquent amount." *Artemov v. TransUnion, LLC*, No. 20-CV-1892, 2020 WL 5211068, at *5 (E.D.N.Y. Sept. 1, 2020). Plaintiff's argument to the contrary stems from an implausible interpretation of the term "past due" as meaning something other than the amount that is owed. But "past due" is synonymous with "delinquent," *see Delinquent*, *Black's Law Dictionary* (11th ed. 2019), and simply means "late being paid," *Past Due*, Merriam-Webster, https://www.merriam-webster.com/dictionary/past%20due (last visited Nov. 19, 2020). Accordingly, describing Plaintiff's balances as "past due" is consistent with their charged-off status, which "qualifies as a delinquency." *Artemov*, 2020 WL 5211068, at *3; *see Miss Jones LLC v. Arcello*, No. 17-CV-895, 2018 WL 1525800, at *2 n.1 (E.D.N.Y. Mar. 2, 2018) ("A charged off or written off debt is a debt that has become seriously delinquent, and the lender has given up on being paid.") (internal quotation marks omitted), *report and recommendation adopted*, 2018 WL 1525664 (E.D.N.Y. Mar. 28, 2018).

The only authority that Plaintiff cites for the proposition that a "past due" balance suggests an ongoing monthly obligation is an article that describes a "past due amount" as "the amount you must pay to make your account current again." (P's Opp. at 11 (quoting Latoya Irby, *What Does It Mean to Be Past Due on an Account?*, Balance (Sept. 23, 2020), https://www.thebalance.com/what-does-it-mean-to-be-past-due-on-an-account-960739).) Not only does Plaintiff provide no explanation for why this definition should be used over others, *see, e.g.*, Julia Kagan, *Past Due*, Investopedia (Jan. 14, 2020), https://www.investopedia.com/terms/p/past-due.asp ("Past due refers to a payment that has not been made by its cutoff time at the end of its due date."), but he also ignores a portion of the article warning that if a debt

8

remains past due for long enough, a consumer will no longer have the option of making regular monthly payments – which is precisely what happened with Plaintiff's Chase accounts.  *See* Irby, *supra* ("At 180 days (or six months) past due, your credit card will be charged off.  You won't have the option to catch up on the amount due balance and resume regular minimum payments.  Instead, you'll only have the option to pay the balance in full.").  Consequently, Plaintiff's own source undermines his argument that "'[p]ast due' connotes a continuing obligation to make monthly payments on an open account by virtue of the monthly delinquencies that have accumulated and continue to be due on a rolling, monthly basis."  (P's Opp. at 10-11.)

Second, even if the Court were to adopt Plaintiff's strained reading of "past due," the entries on Plaintiff's credit report would not be misleading, because the monthly payment amount listed for each account is $0, (Turcotte Decl. Ex. E at OST-000009-14), and "[a]ny possible 'confusion' plaintiff alleges is dispelled by this unequivocal declaration," *Artemov*, 2020 WL 5211068, at *5, *see Thompson v. Equifax Info. Servs., LLC*, 441 F. Supp. 3d 533, 550 (E.D. Mich. 2020) (determining that furnished information was not misleading when "reading the trade line in context and as a whole").  In other words, even if it were plausible that "past due" could "connote[]" an ongoing monthly obligation in some cases, (*see* P's Opp. at 10), Plaintiff's is not one of them.  No one could be misled into believing that the past-due balances on Plaintiff's Chase accounts suggest an ongoing monthly obligation when the monthly payment on each account is listed as $0.

As a result, the out-of-circuit cases that Plaintiff cites for support – *Jackson v. Equifax Info. Servs., LLC*, No. 18-CV-271, 2019 WL 179570 (M.D. Ga. Jan. 11, 2019), and *Foster v. Santander Consumer USA, Inc.*, No. 18-CV-4146, 2019 WL 3490463 (N.D. Ga. May 29, 2019), *report and recommendation adopted*, 2019 WL 8277254 (N.D. Ga. Oct. 15, 2019) – are

9

distinguishable. In both those cases, the plaintiffs alleged that their credit reports incorrectly listed monthly payment amounts that the plaintiffs were not obligated to make because the accounts had been charged off. *See Jackson*, 2019 WL 179570, at *1; *Foster*, 2019 WL 3490463, at *1. Consequently, it was plausible that the monthly payment trade line could materially mislead prospective lenders about the nature of the plaintiffs' obligations to make payments on those accounts. *See Jackson*, 2019 WL 179570, at *4; *Foster*, 2019 WL 3490463, at *11-12. By contrast, "[m]erely listing a past due balance – an undisputed legal obligation – for a charged off account is quite different than incorrectly reporting a future monthly responsibility when such requirement no longer exists." *Artemov*, 2020 WL 5211068, at *5 (distinguishing *Jackson*). Here, where Plaintiff's monthly payment obligations were accurately reported, no such confusion is possible, and Plaintiff's reliance on *Jackson* and *Foster* is unavailing. In short, Chase here reported exactly what it should have: that Plaintiff had failed to pay on four accounts (which a potential future creditor would want to know) but had no monthly obligation on those accounts because Chase had written the accounts off (which Plaintiff would want the potential creditor to know).

Because there is no genuine dispute of material fact that Plaintiff's Chase accounts were accurately reported as charged off, written off, and past due, with monthly payment obligations of $0, Plaintiff has failed to make the threshold showing that the challenged credit information is incomplete or inaccurate. Accordingly, Chase is entitled to summary judgment on Plaintiff's claims that Chase violated the FCRA by inaccurately reporting Plaintiff's account balances. *See Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1313 (11th Cir. 2018) (defendant entitled to judgment as a matter of law where undisputed facts indicate plaintiff did not meet threshold requirement of establishing that reported information was inaccurate or incomplete).

**B.**     **Whether Chase Had an Obligation to Mark Plaintiff's Account as Disputed**

In his Complaint, Plaintiff also alleges that Chase willfully or negligently violated the FCRA by failing to mark his account as disputed. (Compl. ¶¶ 43, 55.) As this Court recently explained – in a case involving the same lawyers as this one – there is no private cause of action under 15 U.S.C. § 1681s-2(a)(3) for failing to mark an account as disputed. *See Lichtman v. Chase Bank USA, N.A.*, No. 18-CV-10960, 2020 WL 1989486, at *6 (S.D.N.Y. Apr. 27, 2020). And, although several circuits have found that a plaintiff can state a cause of action under § 1681s-2(b) for failing to report an account as disputed, all "premise their holdings on the plaintiff having a meritorious or *bona fide* dispute." *Id.* at *7 (collecting cases).

Here, no such meritorious or *bona fide* dispute exists. In Plaintiff's dispute letter to Experian, Plaintiff wrote that "the balance listed is incorrect" on his Chase credit card. (Turcotte Decl. Ex. B.) Chase investigated and confirmed that the balance was correct. (P's 56.1 Resp. ¶ 7.) Plaintiff even concedes that the balance was correct. (*See* P's Opp. at 1, 13 n.5.) And, as discussed above, it was not inaccurate to describe Plaintiff's balance as past due. Thus, even if the Second Circuit were to recognize a cause of action under § 1681s-2(b) for failing to report an account as disputed, "[t]he Court is not persuaded that Chase's failure . . . to report Plaintiff's account as disputed can be misleading by itself when Plaintiff has failed to show a genuine dispute of material fact that the disputed information is inaccurate in the first place." *Lichtman*, 2020 WL 1989486, at *7. Accordingly, Chase is entitled to summary judgment on Plaintiff's claims that it willfully or negligently violated the FCRA by failing to mark Plaintiff's account as disputed. *See id.* at *7-8; *see also Rosenberg v. Equifax Info. Servs. LLC*, No. 19-CV-42, 2020 WL 4253063, at *3 (D.N.J. July 16, 2020) (granting summary judgment for defendant where plaintiff did not show an inaccuracy in her credit report).

\* \* \*

In bringing this lawsuit, Plaintiff and his attorneys take the position that an individual who has failed to pay on four credit cards, and at this moment owes the bank more than $33,000, is entitled to money damages *from* that bank because the bank truthfully reported the amounts he owed and that it had given up on ever collecting. That takes some nerve. The FCRA was enacted to remedy real abuses in credit reporting, not for imaginative attorneys to advance farfetched, if not absurd, interpretations of the statute on behalf of unharmed debtors. The statute is a shield for debtors, not a sword for lawyers. As my colleagues in the Eastern District of New York have observed in connection with similar remedial statutes that lawyers have attempted to apply in ways Congress never imagined or intended, "remedial laws can themselves be abused and perverted into money-making vehicles for individuals and lawyers." *Saunders v. NCO Fin. Sys., Inc.*, 910 F. Supp. 2d 464, 465 (E.D.N.Y. 2012); *see Saraci v. Convergent Outsourcing, Inc.*, No. 18-CV-6505, 2019 WL 1062098, at \*4 (E.D.N.Y. Mar. 6, 2019) ("Stretching the statute to unreasonable lengths does no one any good except lawyers."); *Huebner v. Midland Credit Mgmt., Inc.*, 85 F. Supp. 3d 672, 673 (E.D.N.Y. 2015) ("The majority of cases that I see under the statute are brought by a handful of the same lawyers . . . [f]requently . . . on behalf of the same debtor-plaintiffs . . . often brought for the non-salutary purpose of squeezing a nuisance settlement and a pittance of attorneys' fees out of a collection company, which it will often find cheaper to pay than to litigate."); *Turner v. Asset Acceptance, LLC*, 302 F. Supp. 2d 56, 59 (E.D.N.Y. 2004) ("Congress enacted the FDCPA in order to combat egregious abuses of debtors, abuses that are real and troubling. It is almost as troubling, however, for an attorney to take unreasonable advantage of Congress's good intentions and the sound legislation it has enacted.").

## IV. CONCLUSION

For the reasons set forth above, Chase's motion for summary judgment is GRANTED. The Clerk of Court is respectfully directed to terminate the pending motion, (Doc. 31), enter judgment for Chase Bank USA, N.A., and close the case.

**SO ORDERED.**

Dated: November 19, 2020
       White Plains, New York

*Cathy Seibel*
_____
CATHY SEIBEL, U.S.D.J.